**KAISER ALUMINUM & CHEMICAL SALES, Inc.**

v.

**HARTFORD ACCIDENT & INDEMNITY CO.**

No. 7397.

United States District Court
W. D. Missouri, W. D.

Dec. 14, 1953.

Supplemental Opinion Jan. 4, 1954.

Ira K. Witschner, Charles V. Garnett, Kansas City, Mo., for plaintiff.

Clifford B. Kimberly, Kansas City, Mo., for defendant.

REEVES, Chief Judge.

The question for decision in this case has been submitted on an Agreed Statement of Facts. The plaintiff furnished specified materials to Pendleton Construction Company, a corporation, doing business as a corporation of the State of Oklahoma. Such materials were sold by plaintiff for the use by the purchaser "in the performance of its general contract with Cooperative Power & Light Company at Iola, Kansas, for the construction of certain power lines * *."

The materials furnished aggregated $21,168.30, as indicated in the invoices set out in the Agreed Statement of Facts. There was a supplemental charge, not for material, entitled "Reels Chgd." in the sum of $1,161.

The defendant became a conventional surety on behalf of the purchaser or contractor. There was a default in the payment of the account for materials furnished and the defendant tendered the sum of $21,168.30, the exact amount of the invoices for materials furnished, and not including interest. This tender was made long after the accounts matured and after default in their payment was made by the purchaser.

The plaintiff rejected the tender because it did not include the sum of $30 for reels not returned by the purchaser. The reels were used for packaging the materials shipped, and for other purposes. They were returned, save a quantity amounting in value or charge

to $30. Apparently it is the contention of the defendant that, since there was a controversy over the charge for reels, the whole account remained unliquidated and that it is not liable for interest.

1. An examination of the invoices set out in the Agreed Statement of Facts shows that the reels were not charged as materials to be used in the project but it was a mere charge and, as explained in the Agreed Statement of Facts, the reels were in the nature of packaging items for the shipment of materials and were not used in any definite way in the construction project. As stated, reels valued at $1,131 were returned, leaving a balance unpaid on the charge, of $30. It is apparent that neither the plaintiff nor the defendant as surety treated the reels as part of the materials subject to its suretyship.

■ 2. On the subject of Mechanics' Liens, in 57 C.J.S., § 44, pp. 535, 536, it is said:

"Generally a lien may be acquired for materials which, although not incorporated in the building or improvement, are used in the construction and, *by their use, are actually or practically consumed, wasted, destroyed, or rendered worthless or unfit for further use.*" (Emphasis mine.)

In this case the reels were not used in such way as to destroy them but, on the contrary, with negligible exception, all were returned to the seller. 57 C.J.S., Mechanics' Liens, § 45, p. 538, specifically provides in reference to the intent or purpose in furnishing materials, as follows:

"However, the weight of authority is to the effect that it is essential that the materials shall have been sold or furnished for the purpose of being used in the particular building on which a lien is claimed".

Quite clearly the reels mentioned in the stipulation of facts were not sold but merely charged for packaging purposes and with the intent and purpose on the part of both the seller and the purchaser that they would be returned for credit and not used in the project.

In Glencoe Lime & Cement Co. v. Polar Wave Ice & Fuel Co., Mo.App., 184 S.W. 952, the Supreme Court of Missouri said (Syllabus 1):

"Where cement was sold at a fixed price per sack under an agreement that the contractor should receive a refund on the sacks returned, the price of the sacks not returned is a lienable item."

There it appears that the material was charged for, and the sacks included. Such is not the case here.

■ It would follow that the plaintiff is entitled to judgment against the defendant for the material furnished, not the reels, and it should have interest on the unpaid accounts in accordance with the sales arrangement. To stop interest the defendant should have tendered the full amount of the invoices plus accrued interest, and the fact that plaintiff demanded payment of the balance on reels would not, under all the authorities, stop the accrual of interest. This interest is the usual interest of 6% from the time there was default on each count.

The plaintiff will prepare a judgment in accordance herewith.

### Supplemental Opinion

After the opinion in the above case was prepared and filed on December 14, 1953, it appeared that the defendant had not as yet submitted brief, without fault on the part of counsel. For that reason the case was again reviewed, after the filing of defendant's brief. The memorandum opinion, however, was not withdrawn. The whole case has been briefed again. The only issue is whether interest should have been computed from maturity of the accounts. The contract so provided.

There is the further question as to whether, upon tender of the face amount of the claim, such tender would have the effect to stop the accrual of interest; it would not. It was the duty of the de-

fendant, under its contract, to have tendered not only the amount of the defaulted claims but the amount of the accumulated interest. Since it did not do that, the accrual of interest was not tolled. Since the account for reels was not part of the defendant's obligation, it became its duty to tender the amount it actually owed, as above indicated.

The memorandum opinion heretofore filed appears to be correct and should be permitted to stand. In accordance with that opinion, the plaintiff will prepare a journal entry.